## George K. Wentworth, Defendant in Error, v. Charles T. Otis, Plaintiff in Error.

## Gen. No. 16,183.

1. CONTRACTS—*when express not essential to recover.* The existence of an express contract is not necessary where under the evidence it appears that the plaintiff is entitled to recover upon the basis of a *quantum meruit.*

2. MEASURE OF DAMAGES—*when inaccuracy will not reverse.* If the finding and judgment so closely approximate the fair cash market value which was the appropriate measure of damages, measured by the most available and practical standards, that it stands for substantial justice, such finding and judgment will not be disturbed.

Error to the Municipal Court of Chicago; the HON. FRANK CROWE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed February 21, 1912.

ASHCRAFT & ASHCRAFT, for plaintiff in error.

LAWRENCE P. CONOVER, for defendant in error.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Defendant in error brought suit in the Municipal Court against plaintiff in error to recover the alleged contract price, at 50 cents per hundred pounds, or the fair cash market value, of 88,530 pounds of hay, sold to and received by plaintiff in error in April, 1908. A trial by the court without a jury resulted in a finding and judgment against plaintiff in error for $442.65, to reverse which judgment he prosecutes this writ of error.

The contentions of plaintiff in error may be summed up in the statement that the finding and judgment are against the manifest weight of the evidence.

Both parties are residents of Chicago and own and operate adjoining farms in Newton county, Indiana.

Defendant in error testifies that in March, 1908, he called at the office of plaintiff in error in Chicago, for the purpose of ascertaining whether he desired to purchase any hay; that plaintiff in error was not in the office and witness asked the bookkeeper or man in charge of the office (Jones) where plaintiff in error was, and Jones replied he was down at the ranch; that witness said he had some hay he wanted to sell, and in reply to an inquiry by Jones as to how much he wanted for it, he said, "Ten dollars a ton, I have made a rule since I have been farming, never to sell any hay less than ten dollars. If I can't get ten dollars I wont sell it. I will feed it up." Witness further testified that Jones said he would write Mr. Otis, and witness replied, "All right, I wish you would. I will go over to my office and I will write my man that I had a talk with you." Witness further testifies that he wrote his man (Miller) the same day, stating his conversation with Jones, and that the price of the hay was ten dollars a ton. Miller corroborates defendant in error in this particular. Jones denies positively that defendant in error was in the office or that he ever had the conversation related by defendant in error, or that he wrote plaintiff in error about any hay. There is some controversy in the evidence relative to the authority of Jones to act for plaintiff in error, and as to whether or not Jones was in the employ of plaintiff in error in an individual capacity. It is undisputed, however, that Jones was employed in the office occupied by plaintiff in error, and that in the absence of plaintiff in error from Chicago, Jones frequently wrote to him in regard to the business of the farm. It is also undisputed that shortly after the

time defendant in error claims to have had the conversation with Jones, plaintiff in error's foreman, Baxter, drove to the farm of defendant in error and arranged with his foreman, Miller, to commence hauling the hay. Baxter testifies that just before he commenced to haul the hay he received a letter from plaintiff in error, who was in California, advising him that defendant in error had hay to sell, and instructing him, if he got short, to go and get it; that when he went to the farm of defendant in error he asked Miller if the latter knew anything about any contract with reference to the hay and that Miller said he did not, but that he had orders from defendant in error to let plaintiff in error have hay if he came after it. Miller testifies that when Baxter came to the farm of defendant in error nothing was said about the price of the hay. Plaintiff in error testifies that he never received a letter from Jones in regard to the hay, and that he found out through common rumor in the neighborhood of his farm that defendant in error had timothy hay for sale.

While there are circumstances in evidence tending to sustain the claim of defendant in error that the hay was purchased by plaintiff in error in pursuance to information communicated to him by Jones, it is unnecessary to determine whether or not an express contract for the sale and purchase of the hay at a fixed price was entered into between the parties, because defendant in error is entitled, under the evidence, to recover upon the basis of a *quantum meruit*.

It is asserted by defendant in error and denied by plaintiff in error that the hay in question was of the grade known as "No. 1 timothy." Upon this issue, the evidence is sharply conflicting. Defendant in error testifies that the grade known as "choice timothy" is strictly timothy and admits of the admixture of no grasses, and that No. 1 timothy admits of the admixture of some red top and June grass or blue grass,

and no witness testifies to the contrary. He further testifies that the hay purchased by plaintiff in error was No. 1 timothy. Miller testifies that he has had experience in grading hay, and that the hay hauled by plaintiff in error, except the last three loads, was No. 1 timothy, and that the last three loads was clover hay. Baxter and Parker, who were in the employ of plaintiff in error when the hay was hauled, both testify, in substance, that they know little, if anything, about the grading of hay. Other witnesses for plaintiff in error, who examined some hay which had been taken from the barn of defendant in error and carried in a sack for six or seven months, testify that the hay in the sack was not No. 1 timothy. Without detailing the evidence bearing upon the question whether or not the hay in the sack was a fair sample of the hay purchased by plaintiff in error, we are persuaded that as it appeared in the sack it was not a fair sample of the hay in question. It was of a different cutting, from other land, and was necessarily so bruised and mangled by long sacking that it was practically impossible to intelligently determine its proper grade.

It is conceded there was no fixed market value for the hay at the time and place of delivery, and that the nearest market was Chicago about 36 miles distant, where No. 1 timothy hay in bales was then worth from $13 to $14 a ton. It is also practically conceded that for feeding purposes loose hay is more valuable then bailed hay. If plaintiff in error be charged the prevailing market quotation in Chicago, less commissions and the cost of bailing and transportation, and considering the greater value of loose hay over baled hay, the finding and judgment so closely approximates the fair cash market value of the hay in question, measured by the most available and practical standards, that it stands for substantial justice in the case.

CHICAGO—FIRST DISTRICT—FEBRUARY, 1912.    545

The judgment of the Municipal Court will be affirmed.
*Judgment affirmed.*